```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MARIE MERISIER,

                    Plaintiff,                              MEMORANDUM AND ORDER
     - against -                                            15-CV-2739 (RRM) (RML)

KINGS COUNTY HOSPITAL,

                    Defendant.
-------------------------------------------------------------------X
```
ROSLYNN R. MAUSKOPF, United States District Judge.

On May 12, 2015, *pro se* plaintiff Marie Merisier commenced this action against her employer, the Kings County Hospital ("KCH"), alleging discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). (Compl. (Doc. No. 1).) On July 12, 2016, Merisier filed an amended complaint, alleging race and gender discrimination, as well as retaliation and a hostile work environment. (Am. Compl. (Doc. No. 17).) KCH now moves to dismiss the amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Def. Mem. (Doc. No. 26).) For the reasons set forth below, KCH's motion is granted, but Merisier is given 30 days' leave to file a proposed amended complaint.

## BACKGROUND[1]

Merisier describes herself as a "Black Female." (Am. Compl. at 1.)[2] Over a decade ago, on June 5, 2007, KCH hired Merisier as a phlebotomist. (*Id.*) Merisier provides a chronology of what she describes as "harassment/discrimination," which began her first day of work when her

---

[1] Unless otherwise noted, the facts are taken from the amended complaint, and, for the purposes of this Order, are assumed to be true.

[2] For ease of reference, all citations to Court documents refer to Electronic Case Filing System ("ECF") pagination.

supervisor, Khalid Sheikh, said, "You were not the person I chose for the position, and we got someone from off the streets for the position." (Am. Compl. at 1.) Merisier details a series of complaints she received about her work performance. On October 20, 2008, Sheikh reported that she was "below standard" and needed "improvement." (*Id.*) His evaluation also noted that Merisier needed "to take [her] work seriously," and that her "behavior with patients and coworkers was unacceptable." (*Id.*) Merisier wrote a rebuttal, but received no response. (*Id.*) A month later, on November 19, 2008, she met with the Associated Senior Director, Theresa Glean, who informed her that Merisier "did not do any work for the whole year." (*Id.*) Merisier objected, and tried to show Glean her log sheets, but Glean refused to look at them. (*Id.*) Three years later, on September 16, 2011, Merisier once again received a complaint about her work performance from Sheikh, who wrote to Merisier that she had not been submitting her log sheets on time. (*Id.*)

Beginning in 2012, Merisier tried to have her shift changed, but was repeatedly denied the opportunity to do so. She first asked Sheikh to schedule her for a new shift, which had opened up when one of Merisier's co-workers retired on January 6, 2012. (*Id.*) Sheikh told Merisier that the shift would go to one of Merisier's colleagues, Key Fernandez, though he later told Merisier that her shift would change in March. (*Id.*)

Merisier states that a coworker complained about her behavior and attaches a number of documents to her amended complaint, many of which detail altercations and disciplinary proceedings that Merisier was involved in. (*Id.* at 3–11.) On August 27, 2012, in light of an anonymous complaint against Merisier, Sheikh moved Merisier to the sixth floor away from pediatrics on the fifth floor. (*Id.* at 1.) In August 2013, Merisier alleges that she was falsely accused of using "profanity toward [a] co-worker" and engaging in "[i]nappropriate,

unprofessional and disruptive behavior." (*Id.* at 3; Pl. Opp'n. (Doc. No 20).)[3] As a result of this incident, Merisier was suspended for 20 days without pay from December 16, 2013, and "ending January 12, 2013."[4] (*Id.* at 4, 6.) Then, in February 2014, Merisier was accused of threatening a fellow employee at KCH. (*Id.* at 7.) A hearing was held on the matter, and termination was recommended. (*Id.* at 17.) It is unclear from the papers, however, whether Merisier was ever fired. She was still employed at KCH on June 15, 2016, when Sheikh again denied Merisier's request to change her shift and told her it would go to Fernandez. (*Id.* at 2.)

Without providing specific dates, Merisier further alleges that she was denied numerous opportunities to receive training at KCH. (*Id.* at 2.) She explains that "KCH was offering a training class that would allow employee's [*sic*] the opportunity to receive their national certification in phlebotomy," yet Sheikh only told Fernandez about the training. (*Id.*) Merisier notes that several other employees have received training to become lab technicians and to work at the cancer center, but that she has never been offered a training. (*Id.*) Merisier had to pay $150 to receive her national certification. (*Id.*) She further relates that she asked Sheikh to sign her up for an app, GroupWise, which provides employees with important updates on different events at the hospital. (*Id.*) Sheikh refused to do so even though he signed up other employees. (*Id.*)

---

[3] In Merisier's opposition to KCH's request for a pre-motion conference, Merisier clarifies that she believes she was falsely accused. (Pl. Opp'n. (Doc. No. 20) at 1.) Though typically a court looks only to the four corners of the complaint in deciding a motion to dismiss, a court may "consider factual allegations contained in the plaintiff's opposition papers and other court documents" when the plaintiff is *pro se*. *Vlad-Berindan v. MTA New York City Transit*, No. 14-CV-675 (RJS), 2014 WL 6982929, at *3 n.1 (S.D.N.Y. Dec. 10, 2014). Accordingly, the Court considers the additional allegations in Merisier's opposition papers insofar as they clarify the claims pleaded in the amended complaint.

[4] Presumably, the end date of January 12, 2013 is a typographical error, and the actual end date for Merisier's suspension was January 12, 2014.

Merisier claims that she has "never acquired more than 40 hours annual or sick time leave," even though some of her co-workers, who have only worked at KCH for a year, have "over 200 hours annual and over 150 hours sick time." (*Id.*) Furthermore, she alleges that Sheikh has received a pay increase each year, and that whenever she asks for a pay increase for herself, he tells her "it's the city's fault." (*Id.*) Merisier concludes by noting that there are people at KCH, who have not worked at the hospital as long as she has, but earn a "higher salary, receive[] training, over time [*sic*], and promotions." (*Id.*)

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint need not contain "'detailed factual allegations,'" but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). The plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). The determination of whether "a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir. 2007)).

It is axiomatic that a "document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal

4

pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (internal quotation marks omitted). The Court must construe a *pro se* complaint with "special solicitude," and interpret it to raise the strongest arguments it suggests. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) (quoting *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994)). Even so, "a *pro se* complaint must state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

## DISCUSSION

The Court construes Merisier's amended complaint to raise discrimination, retaliation, and hostile work environment claims against KCH under Title VII. Her claims appear to center around a series of negative performance reviews, consistent failure to provide her with training opportunities or to accommodate her shift change requests, and a reluctance to promote her or give her vacation time or sick leave. The Court finds that Merisier has failed to state a claim for any Title VII violation.

### I. Title VII Administrative Exhaustion Requirement

To the extent that Merisier argues that KHC violated Title VII prior to July 24, 2013, those claims are barred as untimely. Title VII requires an aggrieved party "to exhaust administrative remedies before filing suit in federal court." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015). This administrative exhaustion requirement "applies to both *pro se* and counseled plaintiffs alike." *Id.* The injured party must file a charge with the Equal Employment Opportunity Commission (the "EEOC" or the "Commission") within 300 days of the alleged discriminatory act. 42 U.S.C. § 2000e-5.[5] Filing a charge with the EEOC is "a

---

[5] Title VII generally requires an injured party to file an EEOC charge within 180 days of the unlawful employment practice. However, if "the practice occurs in a State that has laws prohibiting the sort of discrimination plaintiff alleges, and also provides a State agency to enforce such laws . . . [a] claimant has 300 days to file with the EEOC."

5

precondition to bringing [Title VII] claims in federal court," and, as such, failure to timely file such a charge typically results in dismissal of the claim in federal court. *Fowlkes*, 790 F.3d at 384.

Nevertheless, because the administrative exhaustion requirement is not jurisdictional, "it is subject to equitable defenses." *Id.* These doctrines should be applied "sparingly," however. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). The continuing violation doctrine allows courts to hear claims otherwise time barred when the plaintiff has experienced a "continuous practice and policy of discrimination." *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001); *see also Lambert v. Genesee Hospital*, 10 F.3d 46, 53 (2d Cir. 1993) ("Under the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone."). However, "discrete discriminatory acts" – including "termination, failure to promote, denial of transfer, or refusal to hire" – "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp.*, 536 U.S. at 113, 14.

On May 20, 2014, Merisier filed a charge of retaliation with the EEOC. (Compl. at 7–9; Polivy Decl. (Doc. No. 27-2).) The EEOC did not find that KCH had violated any statutes and issued Merisier a right to sue letter on March 30, 2015. (*Id.*) Because Merisier filed a charge with the EEOC on May 20, 2014, any claims of discrimination, which occurred prior to July 24, 2013, are barred by the statute of limitations as untimely. To the extent that she faults a city

---

*Dezaio v. Port Auth. of N.Y. & N.J.*, 205 F.3d 62, 64 (2d Cir. 2000). Because this is the case in New York, plaintiffs have 300 days to file.

policy for her failure to receive a pay raise, such a claim may fall under the continuing violation exception. (Am. Compl. at 2.)

Accordingly, the remaining allegedly discriminatory acts that do not appear to be time barred include: (1) failure to inform Merisier about training opportunities;[6] (2) refusal to accommodate Merisier's request for a shift change; (3) lodging of false allegations against her; and (4) denial of promotions, pay increases, or more than 40 hours of annual leave or sick time.

## II. Discrimination

Merisier alleges that KCH discriminated against her in violation of Title VII. Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

At the pleadings stage, a plaintiff, asserting a discrimination claim, "must plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). A plaintiff sustains an adverse employment action "'if he or she endures a materially adverse change in the terms and conditions of employment.'" *Id.* at 85 (quoting *Galabaya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)). It must be "'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Id.* (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)). An action

---

[6] Merisier does not provide any dates for when she was denied training opportunities. For the purposes of this Order, however, the Court assumes that these incidents occurred either during the 300-day window before the EEOC charges were filed or after Merisier filed a charge with the EEOC. *See Barkley v. City of New York*, No. 12-CV-2159 (JG), 2014 WL 28638, at *11 n.7 (E.D.N.Y. Jan. 2, 2014) (Even though the record did not reflect the dates of certain incidents of harassment, the court assumed that the alleged harassment occurred within the 300-day window).

7

is taken because of the plaintiff's membership in a protected class "where it was a substantial or motivating factor contributing to the employer's decision to take the action." *Id.* (internal quotation marks and citations omitted). A plaintiff adequately pleads the causation element if she alleges "facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* at 87. "To establish an inference of discrimination, a plaintiff must allege that she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Brown v. Daikin*, 756 F.3d 219, 230 (2d Cir. 2014) (internal quotation marks omitted).

A. *Discriminatory Conduct*

In this case, Merisier does not explicitly state anywhere that KCH discriminated against her on the basis of race or gender. Instead, Merisier begins her amended complaint by stating, "I Marie Merisier (Black Female) . . ." (Am. Compl. at 1.) In light of the Court's duty to read *pro se* papers as raising the strongest possible argument, the Court understands Merisier's emphasis that she is a "Black Female" as an allegation that KCH discriminated against Merisier on the basis of her race and/or gender.

Although Merisier alleges membership in a protected class, a necessary element of her claim, she has failed to allege that any conduct was taken because of her race and/or gender. Nothing in the amended complaint provides either direct evidence of discrimination or reveals that Merisier was treated "less favorably than similarly situated employees of other races" or another gender. *Brown v. Daikin America Inc.*, 756 F.3d 219, 229 (2d Cir. 2014) (internal quotation marks omitted). She does not allege, for example, that her employer criticized her in "ethnically degrading terms" or made "invidious comments about others in [her] protected

8

group." *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015). As currently pleaded, nothing in the amended complaint "directly indicates racial bias." *Id.*

Furthermore, Merisier does not describe any similarly situated co-workers, who were treated more favorably than she was. *See, e.g.*, *Stinnett v. Delta Air Lines*, No. 16-CV-4554 (DLA) (LB), 2017 WL 4443520, at *7–8 (E.D.N.Y. Sept. 30, 2017) (dismissing the plaintiff's gender discrimination claims because she did not allege that similarly situated employees were treated differently); *Batiste v. City University of New York*, No. 16-CV-3558 (VEC), 2017 WL 2912525, at *9 (S.D.N.Y. July 7, 2017) (finding that the plaintiff did not state a claim of discrimination because she did not allege that the employee who was treated more favorably was similarly situated). Though Merisier alleges that others have received more sick time than she has, she claims only that she has seniority over some of those co-workers. Merisier has failed, then, to provide any indication that the actions taken against her were because she is a black woman. *Cf. Nguedi v. Fed. Reserve Bank of New York*, No. 16-CV-636 (GHW), 2017 WL 5991757, at *8 (S.D.N.Y. Dec. 1, 2017) (finding that the plaintiff's allegation that white employees were treated more favorably gave rise to an inference of racial discrimination); *O'Toole v. Cty. of Orange*, 255 F. Supp. 3d 433, 439 (S.D.N.Y. 2017) (finding that the plaintiff stated a claim of gender discrimination in part because she alleged that some similarly situated male employees were treated more favorably).

The amended complaint, in short, does not plausibly allege that race and gender were a "substantial" or "motivating" factor informing her employer's decisions. *Vega*, 801 F.3d at 85 (internal citation omitted). As a result, Merisier's discrimination claims under Title VII are dismissed for failure to state a claim under Rule 12(b)(6).

B. Adverse Employment Action

Moreover, Merisier cannot show that Sheikh's refusal to accommodate her shift change requests constituted an adverse employment action. Typically, refusing to change shifts is a mere inconvenience. *Wilson v. New York City Dep't of Transp.*, No. 01-CV-7398 (RJH), 2005 WL 2385866, at *16–17 (S.D.N.Y. 2005) (denying request to change shift did not amount to an adverse employment action); *see also Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) ("If a transfer is truly lateral and involves no significant changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively does not of itself render the denial or receipt of the transfer an adverse employment action."). If, however, the plaintiff alleges that the shift change, or denial thereof, "makes a normal life difficult," then it may constitute an adverse employment action. *Little v. Nat'l Broadcasting Co.*, 210 F. Supp. 2d 330, 377 (S.D.N.Y. 2002). Here, Merisier has not alleged any reason why the denial of her shift change request made her life more difficult. She provides no indication why keeping her current shift was more than simply inconvenient. Accordingly, failure to accommodate Merisier's request for a new shift does not amount to a discriminatory act under Title VII.

### III. Retaliation

Merisier also brings a claim for retaliation under Title VII. (Am. Compl. at 1.) Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

To prevail on a retaliation claim, a plaintiff must plausibly allege that defendants discriminated – or took an adverse employment action – against her because she has opposed any unlawful employment practice. *Vega*, 801 F.3d at 91. A retaliation claim protects those employees who have taken an action "'to protest or oppose statutorily prohibited discrimination.'" *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 251 (E.D.N.Y. 2015) (quoting *Wright v. Monroe Cmty. Hosp.*, 493 F. App'x 233, 236 (2d Cir. 2012)). An adverse employment action includes any action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Vega*, 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). To establish causation, "a plaintiff must plausibly plead a connection between the act and his engagement in protected activity." *Id.* Merisier has failed to adequately plead this nexus.

Outside of Merisier's conclusory allegations that she has endured "retaliation . . . while working for Kings County Hospital," nothing in the amended complaint suggests that Merisier has experienced retaliation. From the face of the amended complaint, it appears that the only protected activity Merisier undertook was filing a charge with the EEOC. However, she does not allege that KCH took any adverse employment action against her because she filed a complaint with the EEOC.[7] Merisier provides no indication that KCH gave Merisier negative performance reviews, failed to inform her of training opportunities or to promote her as retaliation for bringing a claim to the EEOC. In fact, her amended complaint indicates that some of these issues predated her decision to file charges with the EEOC. (Am. Compl. at 1.)

---

[7] KCH notes in its memorandum in support of the motion to dismiss that Merisier also filed a complaint with the New York State Division of Human Rights ("SDHR"), alleging discrimination based on her race. (Def. Mem. (Doc. No. 33) at 8–9.) This formal complaint would also constitute a protected activity for the purposes of Title VII. However, Merisier does not mention it in her amended complaint.

11

In her opposition papers, Merisier mentions for the first time "the many complaints" she made both "formally and informally" about her treatment at KCH, and explains that she contacted her union representative about the false allegations made against her in August 2013. (Pl. Opp'n. at 1.) However, Merisier does not provide a sufficient factual basis to plausibly conclude that any adverse employment action was taken against Merisier because of her complaints. Therefore, Merisier has not stated a claim of retaliation under Title VII.

IV.     **Hostile Work Environment**

Though Merisier does not specifically allege a hostile work environment, she indicates that she was subjected to "harassment" at KCH, and, therefore, in an abundance of caution, the Court addresses whether Merisier has properly alleged such a claim. To state a hostile work environment claim, Merisier must plead facts that would tend to show that the conduct: "(1) is objectively severe or pervasive – that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's protected characteristic," in this case, Merisier's race and gender. *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007). In other words, Merisier must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (internal quotation marks omitted).

In this case, even if Merisier's conclusory allegation of harassment were sufficient to suggest that KCH's conduct created an abusive environment, Merisier fails to plead "factual content that allows the court to draw the reasonable inference" that KCH created such an

environment because of her race and/or gender. *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011). Once again, this critical nexus is missing from her pleadings, and, as a result, Merisier has not properly stated a claim of a hostile work environment. Accordingly, KCH's motion to dismiss is granted.

V.  **Leave to Amend**

Leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), and "a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim," *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2013). Here, in light of Merisier's *pro se* status, Merisier is granted leave to amend her complaint within thirty (30) days of the date of this Memorandum and Order. Should Merisier seek to avail herself of this opportunity, she shall file a proposed second amended complaint, so captioned and bearing the same docket number, and shall plead sufficient facts to support her claims of racial and gender discrimination. Any proposed amended complaint should include: 1) dates for all alleged adverse employment actions; 2) sufficient facts for the Court to determine that KCH's actions amounted to more than mere inconveniences; and 3) sufficient facts for the Court to determine that these actions were taken because of Merisier's race or gender. Should Merisier choose to file an amended complaint, KCH will be given the opportunity to respond.

## CONCLUSION

For the foregoing reasons, KCH's motion to dismiss is granted. (Doc. No.32.) However, Merisier is granted leave to file a proposed amended complaint within thirty (30) days of the date of this Memorandum and Order. Should she fail to timely abide by the terms of this Order, this action will be dismissed.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to send by overnight mail a copy of this Order to *pro se* plaintiff Marie Merisier, and to note the mailing on the docket.

SO ORDERED.

Dated: Brooklyn, New York
 March 23, 2018

*Roslynn R. Mauskopf*

———————————————
ROSLYNN R. MAUSKOPF
United States District Judge